IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICARDO LOPEZ on his Own Behalf and Others Similarly Situated | § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CASE NO. 4:12-cv-3749 The Hon. Lee H Rosenthal |
| W.M. DEWEY & SON, INC. | § § | |
| Defendants. | § | |

## DEFENDANT'S MOTION TO DISMISS
## FOR FAILURE TO STATE A CLAIM

Defendant seeks dismissal of all of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6) as set forth below.

## I.
### OVERVIEW

Defendant W.M. Dewey & Son, Inc. is a trucking company subject to the Motor Carrier Act. Plaintiffs are current or former employees responsible for loading oilfield equipment onto Defendant's trucks. Accepting the facts as pled by Plaintiffs, Plaintiffs fall within the codified definition of "loader" and are therefore exempt from the Fair Labor Standards Act by virtue of the Motor Carrier Act exemption. There is no set of facts Plaintiffs can prove that will take them outside of the Motor Carrier Act exemption and therefore Plaintiffs have not and cannot state a claim under which relief can be granted by this court. Defendant seeks dismissal of all of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

1

## II.
### STAGE OF THE PROCEEDINGS

Plaintiffs filed their Original Collective Action Complaint on December 28, 2012. Defendant signed and mailed a Waiver of Summons on January 16, 2013. The deadline for Defendant to serve an answer or motion under Rule 12 is February 26, 2013. The Initial Pretrial and Scheduling Conference is set for March 29, 2013.

## III.
### STANDARD OF REVIEW

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) tests only the formal sufficiency of the statement of a claim for relief and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "A motion to dismiss an action for failure to state a claim 'admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts.'" *Ramming*, 281 F.3d at 161-62 (*quoting Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992)).

The Supreme Court has elaborated on the pleading standards for civil litigation. *See Ashcroft v. Iqbal*, 556 U.S. 662; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544. "The Supreme Court emphasized two 'working principles' underlying its decisions in *Iqbal* and *Twombly*: first, while a court must accept as true all factual allegations in a complaint, the court need not accept a complaint's legal conclusions as true; and, second, a complaint must state a 'plausible claim for relief' in order to survive a motion to

dismiss." *Iqbal*, 129 S. Ct. at 1949-50. "A claim for relief is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Frame v. City of Arlington*, 647 F.3d 215, 223 (5th Cir. 2011) (en banc) (*quoting Iqbal*, 129 S. Ct. at 1949). Dismissal is appropriate when the plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face or has failed to raise his right to relief above the speculative level. *Wampler v. S.W. Bell Tel. Co.,* 597 F.3d 741, 744 (5th Cir. 2010); *Neman v. Greater Houston All-Pro Auto Interiors, LLC*, 4:11-CV-03082, 2012 WL 896438 (S.D. Tex. Mar. 14, 2012). "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." *WesternGeco L.L.C. v. Ion Geophysical Corp.*, 4:09-CV-1827, 2011 WL 3608382 (S.D. Tex. Aug. 16, 2011). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly* 550 U.S. at 555, *citing Papasan v. Allain* 478 U.S. 265, 286. "When considering a 12(b)(6) motion to dismiss, a court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his claims, not whether the plaintiff will eventually prevail." *See Twombly* 550 U.S. at 563 n. 8.

## IV.
### PLAINTIFFS ARE NOT COVERED BY THE FAIR LABOR STANDARDS ACT

The Fair Labor Standards Act ("FLSA") was enacted "to correct and eliminate labor conditions detrimental to the maintenance of the minimum standards of living

3

necessary for the health, efficiency, and general well-being of workers."James Hardman, *Motor Carrier Service and Federal and State Overtime Wage Coverage,* 35:1 TRANSP.L.J. (2008). Under the FLSA, any overtime worked–meaning time worked in excess of 40 hours per week–is to be paid at a rate not less than one and one-half times the employee's regular rate. 29 U.S.C. § 207 (a)(1). There are certain employers and classes of employees, however, who are not eligible for overtime pay. 29 U.S.C. § 213(b). This is because the FLSA specifically exempts certain employers and employees from its provisions, in some cases due to those industries being covered by a different federal statute. *Id.*

Section 213(b)(1) of the FLSA outlines the Motor Carrier Act exemption, which provides that the Department of Transportation rather than the Department of Labor has the authority to regulate certain employees who work for motor carriers.[1] Every "motor carrier" is governed by the federal Motor Carrier Act of 1935, codified in Title 49 of the United States Code, and expressly excluded by the FLSA statute, § 213(b). *Id.;* 49 U.S.C. § 13501.

A.  **Motor Carriers Are Under the Department of Transportation's Jurisdiction**

The Constitution of the United States expressly grants Congress the power to regulate commerce between the states. U.S. CONST. art. I, § 8, cl. 3. In 1887, Congress passed the Interstate Commerce Act, which created the nation's first regulatory agency,

---

[1] 29 U.S.C. § 213 (b)(1) – aka the "Motor Carrier Act (MCA) Exemption" – "The provisions of section 207 of this title shall not apply with respect to any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. outlines federal labor code. Section 207 of 29 U.S.C. covers the topic of "Maximum Hours." 49 U.S.C. outlines federal transportation code. Section 31502 of 49 U.S.C. covers "Requirements for qualifications, hours of service, safety, and equipment standards."

the Interstate Commerce Commission ("ICC"), and was designed to establish government oversight over the railroads. B. STARR MCMULLEN, THE EVOLUTION OF THE U.S. TRUCKING INDUSTRY 1-22 (D. Belman ed., Ashgate Press) (2005). The Motor Carrier Act of 1935 brought the motor carrier industry under the authority of the ICC. *Id.* at 8. Section 204 of the Motor Carrier Act, 1935, provides that it "shall be the duty of the Interstate Commerce Commission (now that of the Secretary of Transportation (see § 782.0(c))) to regulate common and contract carriers by motor vehicle as provided in that act, and that 'to that end the Commission may establish reasonable requirements with respect to…qualifications and maximum hours of service of employees, and safety of operation and equipment.'" Motor Carrier Act of 1935 (Pub. L. No. 74-255, 49 Stat. 543 (1935); 49 U.S.C. § 304(a)(1)(2). This is the authority which brought motor carriers under the jurisdiction of the Department of Transportation.

By the 1970s, Congress began deregulating several industries, including freight carriers, and in 1996 Congress eliminated the ICC altogether. Surface Transportation Board, Public Information: ICC Information (visited Feb. 25, 2013) www.stb.dot.gov/stb/public/resources_icc.html. Many of the remaining functions were transferred to the new National Surface Transportation Board. *Id.* The Federal Motor Carrier Safety Administration (FMCSA) was established as a separate administration within the U.S. Department of Transportation in 2000 as a way to ensure the safety and management of motor carriers. Motor Carrier Safety Improvement Act of 1999, 49 U.S.C. § 113 (1999). Even after the amendments, additions, and deletions to the

legislation of the trucking industry, the Motor Carrier Act established in 1935 and the FLSA in 1938 (containing the Motor Carrier Act exemption) still apply today.

**B.    Defendant Is A "Motor Carrier"**

Defendant W.M. Dewey & Son, Inc. is a family owned and operated oilfield interstate pipe hauling company in Houston, Texas that has continuously served the oilfield industry for over a century. It operates as a custom bonded carrier for transporting pipes and cargo to and from area docks, traveling throughout Texas, Louisiana, Mississippi, Oklahoma, Arkansas, and New Mexico.

Defendant, in the business of providing transportation of oilfield pipes, is a "motor carrier" as that term is defined by the Motor Carrier Act: "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). "In government language, what most people call a trucker or a trucking company is called a motor carrier." Federal Motor Carrier Safety Administration, *Trucking Definitions* (last modified March 11, 2012) <http://www.fmcsa.dot.gov/registration-licensing/registr.htm>. The Secretary of Transportation has the power to regulate motor carriers, including safety of operation and equipment. 49 U.S.C. § 31502(b)(1).

Defendant is a registered motor carrier with the Federal Motor Carrier Safety Administration and has operating authority for 48 states. This is a matter of public record on the public database of the Department of Transportation Federal Motor Carrier Safety Administration website. *See* http://li-public.fmcsa.dot.gov/LIVIEW/pkg_menu.prc_menu.

## C. Plaintiffs Are Within the Jurisdiction of the Secretary of Transportation

The Fair Labor Standards Act was passed in 1938, after the Motor Carrier Act. Section 213(b)(1) of the FLSA provides that overtime requirements do not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours." 29 U.S.C. § 213(b)(1); *see also Levinson v. Spector Motor Serv.*, 330 U.S. 649 (1947). The Secretary of Transportation has the jurisdiction to prescribe requirements for the employees of motor carriers with respect to their qualifications and maximum hours of service. 49 U.S.C. § 31502(b)(1). This is the authority which excludes motor carriers from the overtime provisions of the FLSA, and the same law remains today. The Department of Labor regulations enforcing the FLSA state that whether an employee is within the jurisdiction of the Secretary [of Transportation] "depends both on the class to which his employer belongs and on the class of work involved in the employee's job." 29 C.F.R. § 782.2(a).

Overtime requirements do not apply to employees of motor carriers for whom the Department of Transportation claims jurisdiction and who "engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of property in interstate commerce. 29 C.F.R. § 782.2(a).

The Supreme Court has held that there are four main categories of employees that are ordinarily considered to affect the safety of motor vehicles: (1) drivers; (2) driver's helpers; (3) loaders; and (4) mechanics. *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 708 (1947); *Levinson,* 330 U.S. 649 at 668-69.

7

1. **Plaintiffs Are Loaders**

Plaintiffs fall into the category of "loaders" which is defined at 29 C.F.R. § 782.5. The relevant portion of the definition states:

> A "loader" as defined for Motor Carrier Act jurisdiction . . . is an employee of a carrier subject to section 204 of the Motor Carrier Act . . . whose duties include, among other things, the proper loading of his employer's motor vehicles so that they may be safely operated on the highways of the country. . . . [H]is duties will also usually include unloading and the transfer of freight between the vehicles and the warehouse, but he engages, as a "loader," in work directly affecting "safety of operation" so long as he has responsibility when such motor vehicles are being loaded, for exercising judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate or foreign commerce will not be jeopardized.

29 C.F.R § 782.5. These were and are Plaintiffs' duties while employed by Defendant.

The picture below shows one of Defendant's trucks being loaded with oilfield pipes. The Plaintiffs in this lawsuit are the loaders who place the pipes onto the truck.



The following are true statements regarding each of Plaintiff's job duties:

1.) Loading trucks is a usual part of the employee's duties.

2.) The employee has responsibility for exercising judgment and discretion in planning and building a balanced load.

3.) The employee has responsibility for placing, distributing, or securing freight in such a manner that the safe operation the highways will not be jeopardized.

4.) The employee is likely to be called on in the ordinary course of his work to perform, either regularly or form time to time, safety-affecting activities (activities that affect the safety of operation of the trucks on public highways).

5.) The employee's duties have a substantial, direct effect on the safety of operation of the trucks carrying the loads.

6.) The trucks the employee loads travel in interstate commerce, from one state to another, and interstate trips are a natural, integral, and inseparable part of W.M. Dewey & Son's services.

7.) The employee is likely to be expected to perform at any time the safety-affecting activities of loading freight onto trucks that travel on public highways.

Perhaps as significantly, the following are statements that describe what the job duties of each plaintiff do not entail:

1.) The employee does not unload freight only, with no loading duties.

2.) The employee does not only handle freight before or after loading.

3.) Another employee does not tell this employee exactly where to place the freight on the truck.

9

4.) The employee does not assist in loading only, with no discretion on how and where to place the freight.

5.) The safety-affecting activities of the employee's duties are not trivial, casual, or insignificant.

Defendant requires every loader to attend weekly and monthly safety meetings which cover topics such as how to properly tie down a load, company-wide truck loading policies, proper technique for storing pipe, injury prevention methods, and the proper wearing of safety gear. The regular and ongoing safety training provides further support for the fact that Plaintiffs' duties affect the safety of operation of the vehicles they load.

### 2. Plaintiffs' Factual Allegations Not Enough

Plaintiffs make very few allegations of fact in their Complaint. Most of the statements are conclusions of law. Below are the allegations of fact which Defendant accepts as true for purposes of this motion to dismiss, as required by Federal Rule of Civil Procedure 12(b)(6):

1. "Plaintiff worked for Defendant as a laborer during the relevant statutory time period."

2. "The class of similarly situated employees ("Putative Class Members") consist of the following: All persons who were employed by Defendant as a laborer, by whatever job title, within the past three years and paid a flat hourly rate with no overtime compensation."

8. "These laborers perform duties including warehousing, grinding pipe, rolling pipe, bending pipe, sawing/cutting pipe, inventory, moving pipe, unloading trucks, operating forklifts and other small equipment to effectuate those duties among other common labor."

Nothing in these allegations is inconsistent with the definition of "loader" which provides an accurate description of Plaintiffs' actual job duties. A comparison of each of the Plaintiffs' factual allegations to the regulation defining "loader" makes clear that Plaintiffs have failed to plead sufficient facts to survive a motion to dismiss for failure to state a claim. FED. R. CIV. P. 12(b)(6).

### D. Well-Established Law Makes Loaders Exempt Employees

"The Department of Transportation has found that the activities of 'loaders' directly affect the safety of operation of motor vehicles in interstate commerce." *Hopkins v. Texas Mast Climbers, LLC,* 2005 WL 3435033, *5 (S.D. Tex. Dec. 14, 2005) *citing Levinson,* 330 U.S. at 669.

The Supreme Court has interpreted a loader to be an exempt employee through its holding that a loader affects the safety of operation. A loader's duties "will usually also include unloading and the transfer of freight between the vehicles and the warehouse, but he engages, as a 'loader' in work directly affecting 'safety of operation' so long as he has responsibility when such motor vehicles are being loaded, for exercising judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe

11

operation of the vehicles on the highways in interstate or foreign commerce will not be jeopardized." 29 C.F.R. § 782.5 (a); *see also Pyramid Motor Freight Corp.*, 330 U.S. 695; *Levinson*, 330 U.S. 649.

The Southern District of Texas has also interpreted a loader to affect the safety of operation and therefore qualify as under the jurisdiction of the Department of Transportation so exempt from overtime. "A 'loader,' as defined for purposes of the MCA, is an employee of a carrier subject to the MCA 'whose duties include, among other things, the proper loading of his employer's motor vehicles so that they may be safely operated on the highways of the country.'" *Garza v. Smith Int'l, Inc.*, 2011 WL 835820, *8 (S.D. Tex. Mar. 7, 2011) *citing* 29 C.F.R. § 782.5. The Southern District of Texas has additionally specifically held that a loader can be called a helper, as plaintiffs were called. "A 'loader' may be called by another name, such as 'dockman,' 'stacker,' or 'helper,' and his duties will usually also include unloading and the transfer of freight between the vehicles and the warehouse." *Yaklin v. W-H Energy Servs., Inc.*, 2008 WL 4692419, *6 (S.D. Tex. Oct. 22, 2008) *citing Levinson* 300 U.S 649; *Pyramid*, 330 U.S. 695.

A recent Southern District of Texas case, *Lucas v. NOYPI, Inc.*, 2012 WL 4754729 (S.D. Tex. Oct. 3, 2012), has facts similar to ours in that the plaintiffs had the duties of loaders who alleged that defendant NOYPI, a commercial moving service, failed to pay them overtime wages. The Honorable Sim Lake granted summary judgment for the defendant, holding that the plaintiffs were loaders and the defendant was a motor carrier, both exempt from the provisions of the overtime requirement since they did not fall within the jurisdiction of the FLSA.

# VI.
## CONCLUSION

The Fair Labor Standards Act claims asserted by the Plaintiffs fail because of the Motor Carrier Act exemption. As a result, Plaintiffs' claims must be dismissed in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,

MIZE, MINCES & CLARK, PC

By:/s/ *Katherine T. Mize*
    **Katherine T. Mize**
    Attorney-in-Charge
    Federal I.D. No.: 15523
    State Bar No.: 784617
    Email: katherine.mize@mizeminces.com
    **Lisa T. Rascoe**
    Federal I.D. No.: 1716065
    State Bar No.: 24073777
    808 Travis Street, Suite 453
    Houston, Texas 77002
    Telephone: (713) 595-9675
    Facsimile: (713) 595-9670

**ATTORNEYS FOR DEFENDANT**